UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JORGE INIESTRA**, *et al.*, | CASE NO. SACV 11-1235-AG (RNBx) |
| Plaintiffs, | |
| v. | **ORDER GRANTING PARTIAL SUMMARY JUDGMENT FOR PLAINTIFFS** |
| **CLIFF WARREN INVESTMENTS, INC.**, *et al*, | |
| Defendants. | |

Before this Court is Plaintiffs' Motion for Partial Summary Judgment ("Motion") on their Fair Housing Act complaint. Plaintiffs challenge Defendants' regulations governing Plaintiffs' apartment complex, claiming that they were facially discriminatory against families with children. The Court agrees, and finds that these regulations violated the federal Fair Housing Act, 42 U.S.C. § 3604, *et seq*., the California Fair Employment and Housing Act, Cal. Gov. Code § 12955, *et seq.*, and the California Unruh Civil Rights Act, Cal. Civ. Code § 51. The Court GRANTS Plaintiffs' Motion in full.

Importantly, Plaintiffs' Motion only seeks partial summary judgment as to *liability* on *three* of their four claims. Thus, this Order does not end this case.

**BACKGROUND**

In September 2004, Plaintiffs Jorge and Maria Iniestra and their three minor children ("Iniestras") moved into the Knott Village Apartments in Anaheim, California. (Defendants' Statements of Uncontroverted Facts "DUF" ¶ 1.) In October 2007, Plaintiffs Jose and Maria Dorado and their three minor children ("Dorados") (collectively with Iniestras, "Plaintiffs") also moved into Knott Village Apartments. (DUF ¶ 2.) Knott Village Apartments is owned by Defendant George Brett, and managed by Defendant Cliff Warren Investments (collectively, "Defendants"). (DUF ¶ 3.) When Plaintiffs Iniestras and Dorados moved in to the complex, the manager was Sylvia O'Campo Gutierrez ("O'Campo"). (DUF ¶ 4.) In November 2010, Defendants hired a new resident manager, Melisa Aguilar ("Aguilar"). (DUF ¶ 8.)

When Plaintiffs moved into the apartment complex, O'Campo gave them a copy of the "House Rules" and "Pool Rules" (together, the Rules) in effect at that time. (DUF ¶ 5, Ex. 6.) The Rules included the following restrictions against children. The bolded titles in parentheses are added here for reference:

- Children on the premises are to be supervised by a responsible adult at all times. Resident agrees that violation of any of the above covenants . . . shall be deemed sufficient cause of termination of this tenancy by the Owner. **("Adult Supervision Rule")**

- Children under the age of 18 are not allowed in the pool or pool area at any time unless accompanied by their parents or legal guardian. **("Pool Usage Rule")**

(DUF ¶ 6.) In addition to the House Rules, O'Campo gave them a memorandum entitled "Unsupervised Children" to remind tenants about the Rules **("Unsupervised Children Memo")**. (DUF ¶ 7.) The Unsupervised Children Memo stated:

    •    It has come to our attention that we are having problems with unsupervised children in the courtyard and walkways of the apartments. House Rules do not allow children to be unsupervised. Resident parents are responsible for the conduct of their children.

    •    Children under the age of 7 years of age are to be accompanied by an adult at all times.

    •    When the building lights come on all children are to be in their apartments. This is for the protection of the children and respect of your neighbors. Knott Village Apartments is a quiet complex and we must insist the children play in a place more suitable for them.  **("Curfew Rule")**

    •    If you do not comply with the House Rules you will leave us no alternative but to give you a 30 Day Notice to vacate.

(DUF Exs. 9, 10.)

In November 2010, Defendants hired Aguilar as the resident manager for Knott Village Apartments. (DUF ¶ 8.)  In June 2011, Aguilar sent another copy of the memorandum regarding Unsupervised Children **("June 2011 Memo")**.  Unlike prior versions requiring children under the age of 7 to be supervised, the June 2011 memorandum stated that all children "under the age of 10 must be accompanied by an adult at all times."  (DUF ¶ 9.)  In September 2011, Defendants circulated a new memorandum regarding Unsupervised Children **("September 2011 Memo")** and a set of revised House Rules, clarifying that children were permitted to play outside. (DUF ¶ 10.)   The September 2011 Memo stated that the June 2011 Memo was distributed "in error." (DUF ¶ 10.)

The parties dispute whether any of these Rules or Memos were enforced, and whether these rules had any measurable impact on Plaintiffs' quality of life or emotional state.  Plaintiffs

were never evicted or served with a thirty or sixty day notice to vacate. (DUF ¶ 16.) Plaintiffs continue to live at the Knott Village Apartments. (DUF ¶ 32.)

**LEGAL STANDARD**

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 269.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. *Id.* at 322-23. If the non-moving party meets this burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

**ANALYSIS**

Plaintiffs assert four claims, but only seek summary judgment on the issue of liability under the first three. Plaintiffs' Claim One is for violations of the Fair Housing Act ("Fair Housing Act"), 42 U.S.C. § 3604, *et seq.*; Claim Two is for violations of the California Fair Employment and Housing Act, ("FEHA"), Cal. Gov. Code § 12955, *et seq.*; and Claim Three is

for violations of the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51. The fourth claim, which is not at issue here, is for negligence.

As explained below, the Court finds that Plaintiffs have successfully demonstrated that no triable issue of fact exists regarding the issue of liability on Claims One through Three. The Court GRANTS Plaintiffs' Motion in full.

**1.    VIOLATIONS OF THE FAIR HOUSING ACT (CLAIM ONE)**

The Fair Housing Act prohibits discrimination against families with children. Here, Plaintiffs bring challenges under Sections 3604(b) and (c) of the Fair Housing Act. The Court addresses each section in turn.

**1.1    SECTION 3604(b)**

Section 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . familial status[.]" "Familial status" is defined as "one or more individuals (who have not attained the age of 18 years) being domiciled with . . . a parent or another person having legal custody of such individual or individuals." 42 U.S.C. § 3602(k)(1). Familial status discrimination thus entails "discrimination against families with children." *Fair Housing Congress v. Weber*, 993 F. Supp. 1286, 1290 (C.D. Cal. 1997); *see also Mathews v. Arrow Wood LLC*, Case No. EDCV-07-1316-SGL, at *6 (C.D. Cal. Apr. 2, 2009) (Plaintiffs' Lodged Cases, Ex. 2); ("Disparate treatment of children would, by implication, necessarily amount to one directed at families.").

A plaintiff may bring a §3604(b) claim by alleging disparate treatment or disparate impact. *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008). Plaintiffs here claim that they allege both theories, but only argue the latter. Accordingly, the Court follows the briefing submitted by Plaintiffs and limits itself to a disparate treatment analysis. Also, because Plaintiffs

successfully make a showing under disparate treatment, there is no need to delve into a disparate impact analysis.

### 1.1.1 Plaintiffs' Prima Facie Case

A plaintiff may establish a prima facie violation of 3604(b) by establishing the existence of "facially discriminatory rules which treat children, and thus, families with children, differently and less favorably than adults-only households." *U.S. v. Plaza Mobile Estates*, 273 F. Supp. 2d 1084, 1091 (C.D. Cal. 2003) (citing *U.S. v. Badgett*, 976 F.2d 1176, 1178 (8th Cir. 1992)).

Here, Plaintiffs have provided evidence of four facially discriminatory policies. The Pool Use Rule ("Children under the age of 18 are not allowed in the pool or pool area at any time unless accompanied by their parents or legal guardian.") does not place the same pool-use restrictions on adults. Likewise, the Adult Supervision Rule ("Children on the premises are to be supervised by a responsible adult at all times."), the Unsupervised Children Memo (children under 7 cannot be unsupervised), and the subsequent June 2011 Memo (requiring adult supervision for children under 10), explicitly discriminate against children by requiring that they–unlike adults–be supervised by an adult at all times.

Defendants protest that the June 2011 Memo was issued in error, asserting that the memo used an old outdated form. But this showing is not enough to disclaim liability for the June 2011 Memo's contents. For the roughly three months that the memo was in effect, Plaintiffs believed that its mandate was official. Defendants present no good reason why they are not responsible for their employee's decision to issue the memo. *See, e.g., Fair Housing Congress*, 993 F. Supp.at 1286 (holding employer responsible). The short duration of the June 2011 Memo may limit damages, but not liability.

### 1.1.2   Injury

Defendants argue that Plaintiffs must establish injury as part of their prima facie case. *See Harris v. Itzhaki* 183 F.3d 1043, 1051 (9th Cir. 1999) (one element of a prima facie disparate treatment claim under the Fair Housing Act is "a distinct and palpable injury"). While this is technically correct, Plaintiffs do not need to make a separate showing. Injury is *assumed* once a violation is established. *Silver Sage Partners, Ltc. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) ("Where a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation.").

Even if some showing were required, it is not onerous. Such injury may include humiliation, embarrassment, and emotional distress. *Green v. Rancho Santa Margarita Mortgage Co.*, 28 Cal. App. 4th 686, 699 (1994). It could also include "inconvenience" and "loss of enjoyment of life." *U.S. v. Burke*, 504 U.S. 229, 241 (1992). Here, Plaintiffs have established injury sufficient to meet their prima facie burden, including evidence of emotional distress. Whether Plaintiffs' injury is ultimately an appropriate basis for anything more than nominal damages is not an issue currently before this Court. *See, e.g., Blomgren v. Ogle*, 850 F. Supp. 1427, 1440-41 (E.D. Wash. 1993) (granting partial summary judgment on 3604(c) claim, but noting damages must be proven at trial). Plaintiffs have met their prima facie burden on all four policies.

### 1.1.3   Defendants' Required Showing

"Once a prima facie case is established, defendants must articulate a legitimate justification for their rules." *Id.* (citing *Badgett*, 976 F.2d at 1178.). To counter a facially discriminatory policy, defendants "must establish that their rules constitute a compelling business necessity and that they have used the least restrictive means to achieve that end." *Id.* (citing *Fair Housing Council v. Ayres*, 855 F. Supp. 315, 318-19 (C.D. Cal. 1994); see also *U.S. v. M.*

*Westland Co.*, CV 93-4141, Fair Housing-Fair Lending ¶ 15,941 (HUD ALJ 1994) (Plaintiffs' Lodged Cases, Ex. 1).

Defendants incorrectly cite *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973), seeking to establish that that they only need to "articulate some legitimate, non-discriminatory reason" for the allegedly discriminatory act. *Id.* at 802. The *McDonnell Douglas* framework only applies when the plaintiff relies on *circumstantial* evidence of discriminatory intent–not when the policy discriminates on its face. *See., e.g., Reidt v. County of Trempealeau*, 975 F.2d 1336, 1341 (7th Cir. 1992) ("The *McDonnell Douglas* procedure is inapt in a situation involving a facially discriminatory policy . . . ."). The *McDonnell Douglas* standard of proof does not apply here. Because Plaintiffs have identified four facially discriminatory policies, Defendants must establish those regulations were the least restrictive means to meet a compelling business necessity.

Here, Defendants claim two compelling business necessities: safety and noise. Defendants spend one brief paragraph, without any case citations, under the inapplicable *McDonnell Douglas* standard, arguing that these concerns justify their policies. Defendants claim that their specific safety concerns were that children would play around the mechanical gate where vehicles enter and exit the property, and around the rooftop of the residents' units, and that young tenants would be at risk in the pool because no lifeguards were on duty. Defendants further claim that the June 2011 Memo, which required adult supervision, was intended to address noise complaints. The Court finds that even if the underlying safety and noise concerns were compelling business necessities, the four policies at issue are not the least restrictive means of achieving Defendants' stated goals.

The Pool Use Rule–which uniformly prevents children under 18 from entering the pool without an adult–is not an efficient method of achieving pool safety. Indeed, it is entirely possible that younger children might be more adept swimmers than their older counterparts. Although California Code of Regulations, title 22, section 65539(c) does require children under 14 to be supervised while swimming, there is no law requiring children over that age to be supervised. For these reasons, the Court in *Fair Housing Congress* struck down an age-based

pool regulation similar to the one here, finding that "[a] prohibition on unsupervised swimming which would prevent even a 17-year old certified lifeguard from swimming unaccompanied is overly restrictive." 993 F. Supp. at 1292 (internal citations omitted). Likewise, the court in *Pack* held that "while the Court recognizes the inherent dangers of unsupervised swimming, the requirement of parent or legal guardian supervision transforms this rule from one that could be reasonably interpreted as a safety precaution to one that simply limits children and their families." 689 F. Supp. 2d at 1246.

The Adult Supervision Rule, the Unsupervised Children Memo, and the June 2011 Memo are also overbroad efforts to address Defendants' purported safety concerns. For example, they require children to be supervised by an adult even during the day, and even when the children are not near any potentially dangerous areas. These policies are also not the least restrictive means to address any noise concerns. Indeed, children might make noise even if their parents are present. More appropriate policies might have simply prevented children from playing near the gates or on the rooftops, or required all residents to maintain a certain noise level. District courts have struck down similar adult supervision policies as inappropriate attempts to address safety and noise concerns. In *Plaza Mobile Estates*, the court granted partial summary judgment for plaintiffs because a rule prohibiting children walking around the mobile home park without adult supervision was an overbroad attempt to ensure the safety of children. 273 F. Supp. 2d at 1091. In *Fair Housing Congress,* the court granted partial summary judgment for plaintiff because an apartment rule which stated that "[c]hildren will not be allowed to play or run around inside the building area at any time because of disturbance to other tenants or damage to building property" was overbroad. 993 F. Supp. at 1289; *see also Pack,* 689 F. Supp. 2d at 1244 (granting partial summary judgment for plaintiff because rule requiring children "10 and under to be supervised by an adult" violated § 3604(b)); *Westland*, CV-93-4141, at ¶ 15 ("The requirement that children always be supervised by an adult is unjustified"); *Landesman v. Keys Condo. Owners Ass'n*, 2004 U.S.Dist. LEXIS 21746, at *3 (N.D. Cal. 2004) ("The desire for peace and quiet—while a worthy goal—is not a valid justification for denying access to common facilities on the basis of familial status.").

### 1.1.4 Conclusion

Plaintiffs have successfully established that the Adult Supervision Rule, the Pool Usage Rule, the Unsupervised Children Memo, and the June 2011 Memo violate 3604(b).

## 1.2 SECTION 3604(c)

Plaintiffs claim that the same four violations that gave rise to 3604(b) liability also give rise to 3406(c) liability. In addition, Plaintiffs also assert that the Curfew Rule–which stated that "[w]hen the building lights come on all children are to be in their apartments"–violated 3604(c).

Section 3604(c) makes it unlawful "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . familial status, . . . or an intention to make any such preference, limitation, or discrimination." A statement violates 42 U.S.C. §3604(c) if the statement, when heard by an ordinary reader, would conclude that the rule suggests a preference. *U.S. v. Hunter*, 459 F.2d 205, 215 (4th Cir.), *cert. denied*, 409 U.S. 934 (1972). Intent is not a necessary element of a §3604(c) violation. *Jancik v. HUD*, 44 F.3d 553, 556 (7th Cir. 1995); *see also Fair Housing Congress*, 993 F. Supp. at 1290 ("A familial status claim does not require a showing of discriminatory intent."); *Pack*, 689 F. Supp. 2d 1237, 1245 ("section 3604(c) does not require discriminatory intent and is not analyzed under a burden-shifting paradigm . . . [d]iscriminatory intent is not required"). Enforcement is also not a necessary element. *See., e.g., Blomgren v. Ogle*, 850 F. Supp. 1427, 1440 (E.D. Wash. 1993) (discriminatory written apartment rule violated 3604(c), even though plaintiff testified that she had never seen the rule and defendants testified the rule was never enforced).

The Court finds that all of these rules enforce some limitation on children's use of apartment facilities. They thus "indicate"discrimination based on familial status, and violate 3604(c). An ordinary reader of these rules could not interpret them otherwise. Indeed,

Defendants do not offer any alternative meanings. Because the relevant policies are facially discriminatory, Defendants' cited cases–which all concerned ambiguous advertising messages–do not apply. *See, e.g., Ragin v. New York Times Co.*, 923 F.2d 995, 1000 (2d Cir. 1991) (holding that proof of an advertiser's intent may be relevant to determining the message conveyed). Stripped of their arguments concerning intent, Defendants offer no real opposition to Plaintiffs' 3604(c) showing.

The Court finds that the Adult Supervision Rule, the Pool Usage Rule, the Unsupervised Children Memo, the June 2011 Memo, and the Curfew Rule violate 3604(c).

The Court GRANTS Plaintiffs' Motion as to Claim One.

**2.     CALIFORNIA FEHA (CLAIM TWO)**

Because FEHA is based on the Fair Housing Act, liability under the Fair Housing Act also supports liability under FEHA. *See, e.g., Brown v. Smith*, 55 Cal. App. 4th 767, 780 (1997), Having found that the Adult Supervision Rule, the Pool Usage Rule, the Unsupervised Children Memo, the June 2011 Memo, and the Curfew Rule violate the Fair Housing Act, the Court now finds that they also violate FEHA. The Court GRANTS Plaintiffs' Motion as to Claim Two.

**3.     UNRUH CIVIL RIGHTS ACT (CLAIM THREE)**

Plaintiffs' third claim alleges a violation of the California Unruh Civil Rights Act, which states that "[a]ll persons within the jurisdiction of this state are free and equal, and . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments or every kind whatsoever." Cal. Civ. Code §51. It further provides that "Section 51 shall be construed to prohibit a business establishment from discriminating in the sale or rental of housing based upon age." *Id.; see also Hubert v. Williams,* 133 Cal. App. 3d Supp. 1, 2 (1982) ("The term 'business establishment' has been uniformly construed as including rental

housing."); *O'Connor v. Village Green Owners Assn.*, 33 Cal. 3d 790, 795 (1983) (condominium development violated Unruh when it restricted residency to persons over 18).

Defendants raise two objections. First, they protest that Plaintiffs failed to meet and confer with them on this claim. The Court finds that Plaintiffs meet and confer efforts were sufficient.

Second, Defendants argue that Plaintiffs must prove "intentional discrimination that is unreasonable." *Cohn v. Corinthian Colleges, Inc*., 169 Cal. App. 4th 523, 526 (2008) (also prohibiting intentional discrimination that is "arbitrary" or "invidious"); *see also Sunrise Country Club Assn. v. Proud*, 190 Cal. App. 3d. 377, 381 (1987). While that may be true, courts have found that "[r]ules that restrict children" in violation of section 3604 of the FHA–such as an apartment building rule requiring that all children 10 and under be supervised by an adult while outside–are also unreasonable under Unruh. *Pack,* 689 F. Supp. at 1249; *see also Llanos v. Estate of Coehlo*, 24 F. Supp. 2d 1052, 1060 (E.D. Cal. 1998) (holding that rule which restricted children's access to pools in apartment complex violated Unruh, despite safety claims); *Marina Point, Ltd. v. Wolfson*, 30 Cal.3d 721, 737, 744 (1982) (exclusion of children from a rental property violated Unruh, despite claim that children are "rowdier, noisier, more mischievous and more boisterous than adults" and their exclusion was necessary on "health [and] safety grounds.").

Having found that the Adult Supervision Rule, the Pool Usage Rule, the Unsupervised Children Memo, the June 2011 Memo, and the Curfew Rule violate the Fair Housing Act, the Court now finds that they also violate the Unruh Act. The Court GRANTS Plaintiffs' Motion as to Claim Three.

**DISPOSITION**

The Court GRANTS Plaintiffs' Motion for partial summary judgment on Claims One through Three in full. Because this Order is solely on liability, and because it does not address Claim Four, it does not end this case.

July 31, 2012

_____

Andrew J. Guilford
United States District Judge